## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | )  | |
|---|---|---|
| **TIMOTHY JAMES KANE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 13-12771-DJC** |
| **TOWN OF SANDWICH,** | ) | |
| **Defendant.** | ) | |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          **August 18, 2015**

### I.    Introduction

Plaintiff Timothy James Kane ("Kane") alleges that Defendant Town of Sandwich ("the Town") discriminated against him in violation of the Uniformed Service Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, and Massachusetts law.  D. 29.  The Town has moved for summary judgment.  D. 36.  Kane has moved for leave to file a second amended complaint and for partial summary judgment on certain of the Town's affirmative defenses and one of his claims.  D. 33; D. 39.  For the reasons below, the Court DENIES the Town's summary judgment motion, DENIES Kane's motion to amend his complaint and GRANTS IN PART and DENIES IN PART Kane's motion for partial summary judgment.

### II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute on any material

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

Unless otherwise noted, the following undisputed material facts are drawn from the parties' statements of material facts and their responses.

### A.    Kane Does Not Receive the Permanent Sergeant Position in March 2011

Kane is a Master Sergeant in the U.S. Air Force Reserve. Pl. Further SOF Resp. to Def. SJ Mot., D. 48 ¶ 1; Def. Resp. to P. SOF, D. 52 ¶ 1. Since 2006, Kane has been employed as a police officer by the Town's Police Department ("Sandwich Police"). D. 48 ¶ 2; D. 52 ¶ 2.

The Sandwich Police has had a long history of budgetary shortfalls. D. 48 ¶ 10; D. 52 ¶ 10. The Town's Chief of Police, Peter N. Wack ("Chief Wack"), has publicly complained to the media that officers serving in the National Guard and Reserves contribute to budgetary woes. D.

48 ¶ 11; D. 52 ¶ 11.  When officers are on military leave, the Town must pay overtime wages to non-military officers to cover the shifts of military officers.  D. 48 ¶ 12; D. 52 ¶ 12.

The Town has two types of sergeant's positions:  permanent and provisional.  D. 48 ¶ 21; D. 52 ¶ 21.  Permanent sergeants are filled in accordance with the state civil service system, selected after weighing a candidate's Sergeant's Exam score, an interview and personnel files.  D. 48 ¶¶ 21-22; D. 52 ¶¶ 21-22.  Provisional sergeants are chosen by the Town Manager, Bud Dunham, who has always accepted Chief Wack's recommendations.  D. 48 ¶ 21; D. 52 ¶ 21.  A sergeant earns approximately 20% more than a patrol officer.  D. 48 ¶ 190; D. 52 ¶ 190.

In early 2011, Kane sought a permanent sergeant position.  Def. SOF, D. 38 ¶ 35; Pl. Resp. to Def. SOF, D. 49 ¶ 35; D. 50-1 (Wack Dep.) at 80:21-23.  Kane had attained the highest score on the Massachusetts Civil Service Sergeant's Exam out of all the candidates in 2008.  D. 48 ¶ 29; D. 52 ¶ 29.  Four individuals served on the promotion panel that considered Kane's candidacy:  the Town's Director of Human Resources, Marie Buckner ("Buckner"), Chief Wack and two Sandwich Police lieutenants.  D. 48 ¶¶ 26, 30; D. 52 ¶¶ 26, 30.  The panel's main consideration was the candidates' interviews.  D. 48 ¶ 62; D. 52 ¶ 62.  The panel did not select Kane for the position.  D. 48 ¶ 31; D. 52 ¶ 31.  Instead, in March 2011, the panel promoted now Sergeant Joshua Bound ("Bound") despite his lower Sergeant's Exam score.  D. 48 ¶¶ 31-32; D. 52 ¶¶ 31-32; D. 38-9 (the Town's official letter explaining Bound's promotion).

**B.**     **Kane Deploys to Iraq**

Concurrently, in January 2011, Kane learned that he would be called to active military service in May.  D. 48 ¶ 4; D. 52 ¶ 4.  The same month, Kane informed his superior about his upcoming service.  D. 38 ¶ 17; D. 49 ¶ 17.

When a Sandwich Police employee is called to active duty, the Sandwich Police voluntarily pays the employee differential pay:  the difference between the employee's lower military pay and his higher civilian pay.  D. 38 ¶ 21; D. 49 ¶ 21.  This benefit allows the departing employee to earn as much as he would have at the Sandwich Police had he not been deployed.  D. 38 ¶ 21; D. 49 ¶ 21.  In April or May 2011, Kane met with now Lieutenant Michael Nurse ("Nurse") to discuss his differential pay.  D. 38 ¶¶ 18, 19; D. 49 ¶¶ 18, 19.  Kane told Nurse that his military pay grade was E-6.  D. 38 ¶ 19; D. 49 ¶ 19.

On May 23, 2011, Kane deployed to Iraq.  D. 38 ¶ 16; D. 49 ¶ 16.  During his deployment, on July 1, 2011, the Air Force promoted Kane to the military rank of Master Sergeant, pay grade E-7.  D. 48 ¶ 76; D. 52 ¶ 76.  While in Iraq, Kane did not notify the Sandwich Police that his rank and military pay had increased.  D. 38 ¶¶ 24-25, 47; D. 49 ¶¶ 24-25, 47.  As a result of Kane's mid-deployment promotion, the Sandwich Police overpaid Kane $2,399.84 because his differential pay was based on the difference between his old military pay grade (E-6) and his civilian salary.  D. 38 ¶ 81; D. 49 ¶ 81.

On December 2, 2011, Kane's deployment ended.  D. 38 ¶ 13; D. 49 ¶ 13.  Kane returned to the Sandwich Police the same day.  D. 38 ¶ 13; D. 49 ¶ 13.  When he returned, Kane provided the Town with his military paperwork, including a form that certified his discharge from active duty and showed his rank and date of rank.  D. 38 ¶ 43; D. 49 ¶ 43.

**C.     The Sandwich Police Investigates Kane in 2012**

During his Iraq deployment, Kane was injured.  D. 48 ¶ 127; D. 52 ¶ 127.  Upon his return and sometime in 2012, Kane received medical treatment for his service-related injuries. D. 38 ¶ 14; D. 49 ¶ 14.  For around six months after his deployment, Kane remained on leave

while he recovered.  D. 38 ¶ 15; D. 49 ¶ 15; D. 48 ¶ 130; D. 52 ¶ 130.  During this time, Kane

briefly reported to Hanscom Air Force Base.  D. 38 ¶¶ 15, 41, 51; D. 49 ¶¶ 15, 41, 51.

Sometime in 2012, the Sandwich Police reviewed Kane's differential pay for his 2011

deployment.  D. 38 ¶ 40; D. 49 ¶ 40.  That June, in a phone call with Nurse, Kane told Nurse that

he had been promoted to E-7 at the end of his deployment, i.e., December 2011.  D. 38 ¶ 40; D.

49 ¶ 40.  Kane's answer, however, was incorrect.  D. 38 ¶ 8; D. 49 ¶ 8.  After discussing the

issue with Nurse further, Kane acknowledged he had been promoted earlier, in July 2011.  D. 38

¶¶ 40, 54; D. 49 ¶¶ 40, 54.

Because Chief Wack believed that Kane had intentionally misled the Sandwich Police

about his military promotion, Chief Wack asked the District Attorney to investigate Kane for

possible larceny.  D. 38 ¶ 57; D. 49 ¶ 57; D. 48 ¶ 94; D. 52 ¶ 94.  The District Attorney declined

to prosecute Kane.   D. 48 ¶ 102; D. 52 ¶ 102.   Kane has since paid back the additional

differential pay.  D. 48 ¶ 92(a); D. 52 ¶ 92(a).

Chief Wack also appointed Bound, having been a sergeant for only four months and who

had never before conducted such an investigation, to conduct an internal investigation into the

matter.  D. 48 ¶¶ 103, 104, 105-07; D. 52 ¶¶ 103, 104, 105-07.  As a result of his investigation,

Bound sustained charges against Kane.  D. 48 ¶ 107(d); D. 52 ¶ 107(d).

### D.     Kane Does Not Receive Provisional Sergeant Positions in 2012 and 2013 and a K-9 Officer Position in 2012

In June 2012, the Sandwich Police posted a K-9 officer position, and Kane requested an

opportunity to interview for the position.  D. 38 ¶ 61; D. 49 ¶ 61.  When the Sandwich Police

offered Kane an interview, the Department had already selected a candidate for the position.  D.

48 ¶ 123; D. 52 ¶ 123.  After an interview, Kane was not selected.  D. 38 ¶ 62; D. 49 ¶ 62; D. 48

¶ 126; D. 52 ¶ 126; D. 50-1 at 161:7-12, 204:3-5.

In July and August 2012, Kane expressed an interest in two provisional sergeant positions. D. 48 ¶¶ 108-09; D. 52 ¶¶ 108-09. Provisional positions are chosen based upon an interview; an exam is not part of the selection process. D. 38 ¶ 30; D. 49 ¶ 30. Kane did not receive these provisional Sergeant positions. D. 42 ¶ 110; D. 52 ¶ 110.

Around mid-2012, Kane was recovering from a police-related injury but also under military orders to report to a military base. D. 38 ¶ 51; D. 49 ¶ 51. Chief Wack ordered Kane to either call him or report to the Police, even though Kane was under military orders. D. 38 ¶¶ 38-39; D. 49 ¶¶ 38-39; D. 48 ¶ 143; D. 52 ¶ 143. When Kane refused to comply with Chief Wack's request, Chief Wack charged Kane with insubordination and launched a second internal investigation against him. D. 48 ¶ 145; D. 52 ¶ 145.

In late 2012, Kane complained to the U.S. Department of Labor, Veteran's Employment and Training Service ("VETS") that the Town was denying him promotions and harassing him based on his military status. D. 38 ¶ 60; D. 49 ¶ 60; D. 38-3 (VETS letter) at 1-3. VETS did not find USERRA violations for his denied promotions. D. 38 ¶ 75; D. 49 ¶ 75. It did, however, conclude that the Town improperly charged Kane with insubordination and stated that the withdrawal of any disciplinary action related to the insubordination charge would bring the Town back in compliance with USERRA. D. 48 ¶¶ 150-51; D. 52 ¶¶ 150-51. VETS did not investigate whether the Town improperly alleged that Kane had deliberately sought to keep more differential pay. D. 38 ¶ 75; 49 ¶ 75.

In March 2013, Kane expressed interest in a provisional sergeant position. D. 42 ¶ 108; 52 ¶ 108; D. 50-1 at 146:10-13. Kane was not selected. D. 48 ¶ 111; D. 52 ¶ 111. In September 2014, after Kane filed this lawsuit, he was promoted to permanent sergeant and currently holds that position. D. 38 ¶ 69; D. 49 ¶ 69.

IV.     **Procedural History**

Kane filed this lawsuit on November 1, 2013.  D. 1.  In May 2014, he moved for leave to file an amended complaint to add his state law claims, which the Court granted.  D. 20; D. 27.  In this operative complaint, Kane asserts discrimination claims under USERRA (Count I) and the Commonwealth's anti-discrimination statute, Mass. Gen. L. c. 151B (Counts II and III).  D. 29.  Six months later, in January 2015, Kane moved for leave to file a second amended complaint.  D. 33.

In March 2015, the Town filed for summary judgment.  D. 36.  Kane moved for partial summary judgment a week later.  D. 39.  The Court heard the parties on the pending motions on June 25, 2015 and took the matters under advisement.  D. 54.

V.      **Discussion**

        A.      <u>**Defendant's Motion for Summary Judgment**</u>

USERRA prohibits employment discrimination based on military status.  38 U.S.C. § 4301.  An employer may not deny a member of a uniformed service "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership."  <u>Id.</u> § 4311(a).  Massachusetts law also prohibits an employer from denying "initial employment, reemployment, retention in employment, promotion or any benefit of employment to a person who is a member of, applies to perform, or has an obligation to perform, service in a uniformed military service of the United States, including the National Guard, on the basis of that membership, application or obligation."  Mass. Gen. L. c. 151B, § 4(1D).

USERRA discrimination claims require a "two-pronged burden-shifting analysis." <u>Velázquez–García v. Horizon Lines of P.R., Inc.</u>, 473 F.3d 11, 17 (1st Cir. 2007).  Under this

standard, a plaintiff bears the initial burden to show "that military service was '<u>a</u> motivating factor'" behind the employer's adverse action. <u>Id.</u> (quoting 38 U.S.C. § 4311(c)) (emphasis in original). As a "motivating factor," military service need not be "the sole cause of the adverse employment action." <u>Kelley v. Maine Eye Care Associates, P.A.</u>, 37 F. Supp. 2d 47, 54 (D. Me. 1999) (citing <u>Robinson v. Morris Moore Chevrolet–Buick, Inc.</u>, 974 F. Supp. 571, 575 (E.D. Tex. 1997)); <u>see Velázquez–García</u>, 473 F.3d at 17. Instead, a plaintiff needs only to show that his military service was "one of the factors that a truthful employer would list if asked for the reasons for its decision." <u>Kelley</u>, 37 F. Supp. 2d at 54. Thus, military service is a motivating factor if the employer "'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation." <u>Erickson v. U.S. Postal Serv.</u>, 571 F.3d 1364, 1368 (Fed. Cir. 2009) (quoting <u>Petty v. Metro. Gov't of Nashville–Davidson Cnty.</u>, 538 F.3d 431, 446 (6th Cir. 2008)).

"The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence." <u>Sheehan v. Dep't of Navy</u>, 240 F.3d 1009, 1014 (Fed. Cir. 2001). A plaintiff may offer a variety of evidence to show discriminatory motivation, including "proximity in time between the employer's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." <u>Conners v. Billerica Police Dep't.</u>, 679 F. Supp. 2d 218, 226 (D. Mass. 2010) (quoting <u>Sheehan</u>, 240 F.3d at 1014) (internal quotation marks omitted).

Once a plaintiff meets his initial burden, the burden shifts to the employer.  The employer bears the burden to prove by a preponderance of the evidence that the adverse employment action "<u>would</u> have been taken" regardless of the employee's military status or service. <u>Velázquez–García</u>, 473 F.3d at 17 (quoting 38 U.S.C. § 4311(c)) (internal quotation mark omitted).  Thus, unlike the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), burden-shifting standard in Title VII cases, USERRA places the burden on the employer to show that the stated reason was not a pretext for discrimination.  <u>Velázquez–García</u>, 473 F.3d at 17.

1.     *Kane Has Met His Initial Burden That His Military Status Was a Motivating Factor in the Town's Adverse Actions*

Here, Kane has met his initial burden of showing that his military status was a motivating factor in the Town's refusal to promote him over a three-year period.  First, a jury could infer that the Town consistently declined to promote Kane because it disliked having to spend more money to cover the absences of officers on military leave.  Chief Wack, who wielded significant influence over all of Kane's promotions, has publicly complained that his officers' military service was straining the budget.  D. 48 ¶ 11; D. 52 ¶ 11.

Second, a jury could also infer that the Town improperly considered his military status based on the close temporal proximity between Kane's military activities and the Town's adverse employment actions.  Kane sought his first promotion in early 2011, around the same time he informed the Town that he would soon head to Iraq.  D. 38 ¶¶ 17, 35; D. 49 ¶¶ 17, 35.  Two months later, and two months before Kane's deployment, the Town denied Kane the promotion to permanent sergeant, despite that Kane scored higher on his Sergeant's Exam than Bound, who received the position.  D. 48 ¶ 31; D. 52 ¶ 31.

Kane sought four other positions in 2012 and 2013.  The first three positions opened in 2012 (two provisional Sergeant positions and a K-9 officer position).  Although Kane expressed

interest in all three, he did not receive them.  D. 48 ¶ 111; D. 52 ¶ 31.  Around this time, Kane was recuperating from his service-related injuries and the Town was concerned it would be responsible for paying Kane differential pay while he recovered.  D. 48 ¶ 138; D. 52 ¶ 138.  Also during this time, Chief Wack initiated two internal investigations against Kane, both of which related to Kane's military service:  one for overpayments he received while in Iraq and another for failing to respond or report while Kane reported to a military base on military orders.  D. 48 ¶¶ 94, 145; D. 52 ¶¶ 94, 145.

Kane expressed his interest in the last position in March 2013, D. 48 ¶ 108; D. 52 ¶ 108; D. 50-1 at 146:10-13, approximately three months after VETS concluded its review of whether the Town was discriminating against Kane because of his military status, D. 38 ¶ 60; D. 49 ¶ 60. Drawing all reasonable inferences in Kane's favor, a jury could reasonably conclude that the temporal proximity between the promotion denials and Kane's military activities (his service-related recovery and his VETS complaint) establishes that Kane's military status was a motivating factor behind the Town's actions.

> ### 2. *Genuine Disputes of Material Fact Exist on Whether the Town's Reasons for Denying Kane His Promotions Were Pretextual*

Because Kane has presented sufficient evidence to suggest that his military status was a motivating factor in the Town's decisions to deny him a promotion, the Town must show it is undisputed that the Town would have denied Kane the promotions even if he had not been a veteran.  The Town has not met its burden in this regard.

First, the Town argues that there is "substantial evidence" that Kane was not qualified or less qualified than the other candidates for the positions he sought.  D. 37 at 9.  For example, the Town asserts that Bound was chosen for the 2011 permanent sergeant position because Bound had more relevant experience, more extensive law enforcement training and better leadership

qualities that outweighed Kane's higher Sergeant's Exam score.  Id. at 7.  But whether Bound

was better qualified than Kane for the promotion is a material fact that the parties dispute.  See,

e.g., D. 38 ¶ 68; D. 49 ¶ 68; D. 48 ¶¶ 31, 34, 66; D. 52 ¶¶ 31, 34, 66.  Even if Bound had been

more qualified than Kane in all material respects other than their exam scores, the issue under

USERRA is "not whether an employer is 'entitled' to [take the adverse action], but whether it

would have done so if the employee were not in the military."  Velázquez–García, 473 F.3d at

20.  Here, because the Town had concerns about the financial impact of employing military

veterans and given the temporal proximity between its adverse decisions and Kane's military

service, Kane has shown sufficient doubt on this issue to make it a jury question.  Vega-Colón v.

Wyeth Pharm., 625 F.3d 22, 30 (1st Cir. 2010) (reversing summary judgment despite the

employer's plausible, non-pretextual reasons for its adverse action because the employer failed

to rebut evidence suggesting that the adverse action was linked to the plaintiff's military status).

Second, the Town argues that its promotion denials were also non-pretextual because

Kane's conduct over receiving extra differential pay during his 2011 deployment "raised

significant suspicions of wrongdoing, if not probable cause of a commission of a crime."  D. 37

at 9.  Yet here too the material facts are in dispute.  Although the Town contends that Kane

deliberately misled the Sandwich Police about his military promotion and raise, Kane insists that

the promotion was merely a possibility and that he never attempted to hide his promotion after it

occurred.  D. 38 ¶¶ 22, 23; D. 49 ¶¶ 22, 23.  In fact, when Kane returned from his deployment in

December 2011, he gave the Town relevant military paperwork that showed his military pay

grade had changed.  D. 38 ¶ 43; D. 49 ¶ 43; D. 48 ¶ 85; D. 52 ¶ 85.

Thus, a jury could reasonably infer that Chief Wack's reaction to this overpayment—

initiating both internal and criminal investigations—was disproportionate, a pretext to disqualify

Kane for future promotions.  Significantly, the Town does not explicitly deny that having an internal investigation pending against Kane effectively eliminated him from consideration for the 2012 provisional sergeant positions.  D. 48 ¶ 109; D. 52 ¶ 109.  Kane is the only Sandwich Police employee Chief Wack has referred to the District Attorney for an overpayment and a similar referral has occurred only once in the past decade.  D. 48 ¶ 95; D. 52 ¶ 95.  Chief Wack also appointed Bound, the very candidate chosen over Kane for the 2011 position, to conduct an internal investigation on Kane, even though lieutenants, not sergeants, handled these investigations.  D. 48 ¶¶ 103, 105-07; D. 52 ¶¶ 103, 105-07.

Third, there is evidence in the record, although disputed by the Town, that Kane suffered from disparate treatment and anti-military animus.  Kane alleges that a Sandwich Police officer who has never served in the military was also overpaid but was never subject to either an internal or criminal investigation.  D. 48 ¶ 99; D. 52 ¶ 99.  He also alleges that when he complained that Chief Wack was violating his rights under USERRA, Buckner told him that he was "ungrateful" and "pulls the military flag" when it benefits him.  D. 48 ¶ 14; D. 52 ¶ 14.  Buckner served on the panel that denied Kane the 2011 permanent sergeant position.  D. 48 ¶ 26; D. 52 ¶ 26. Finally, Kane alleges that other officers, including Bound, have remarked that military leave is "scam," have told him to "[p]ick one" between being a police officer and being in the military and have resented those who serve because they lose off-days to cover military absences.  D. 48 ¶¶ 17-20; D. 52 ¶¶ 17-20.  On this record, this Court cannot conclude that the Town has established as a matter of undisputed fact that it would have denied the same promotions had Kane not been in the military.  See, e.g., Velázquez–García, 473 F.3d at 18-19 (noting that "stray remarks by nondecisionmakers, while insufficient standing alone to show discriminatory animus, may still be considered 'evidence of a company's general atmosphere of discrimination' and thus

can be relevant") (quoting <u>Santiago–Ramos</u>, 217 F.3d at 55); <u>Sheehan</u>, 240 F.3d at 1014 (disparate treatment can show discriminatory motive).

As a final argument, the Town argues that at minimum, even if the Town acted wrongly in violating Kane's rights under USERRA, this Court should determine it undisputed that the Town never acted willfully.  D. 37 at 12.  The Town seeks a determination on willfulness because USERRA permits an award of liquidated damages "if the court determines that the employer's failure to comply with [USERRA] was willful."  38 U.S.C. § 4323(d)(1)(C).

Under First Circuit law, the term "willful" in USERRA refers to "a knowing violation or action taken in reckless disregard of the obligations imposed by USERRA."  <u>Fryer v. A.S.A.P. Fire & Safety Corp.</u>, 658 F.3d 85, 91 (1st Cir. 2011).  Willfulness requires "something more than merely showing that an employer knew about the [statute] and its potential applicability in the workplace."  <u>Id.</u> (citing <u>Sanchez v. P.R. Oil Co.</u>, 37 F.3d 712, 721 (1st Cir. 1994) (internal quotation mark omitted).  Instead, it must be shown that the employer acted with "reckless disregard of, or deliberate indifference to, [the] employer's [statutory] obligations."  <u>Id.</u> (citing <u>Sanchez</u>, 37 F.3d at 721–22) (internal quotation marks omitted).

The Court is unable to rule for the Town on this record as a matter of law.  Chief Wack was aware that laws exist to protect veterans like Kane in the workplace.  D. 48 ¶ 165; D. 52 ¶ 165.  The Town also provided Chief Wack with no USERRA training.  D. 48 ¶ 166; D. 52 ¶ 166. Chief Wack never asked the Town's human resources department to conduct USERRA trainings nor did he put on any USERRA trainings himself.  D. 48 ¶ 167; D. 52 ¶ 167.  As of December 2014, Chief Wack still had no plans to conduct USERRA training.  D. 48 ¶ 168; D. 52 ¶ 168. These facts, coupled with the evidence discussed above about the Town's possibly pretextual reasons for denying Kane a promotion, could allow a reasonable jury to conclude that the

Town's repeated denials were willful.  Fryer, 658 F.3d at 92 (affirming jury's finding that defendant's actions were willful because the defendant "knew of its obligations" under USERRA and "ample evidence" showed that defendant's reason was pretextual).

The Court DENIES the Town's motion for summary judgment on Kane's USERRA discrimination claims.[1]  To the extent the state discrimination claims are governed by the McDonnell Douglas standard, the Court concludes that Kane has presented sufficient evidence to show that a genuine issue of material fact exists on whether the Town's stated reasons are pretextual.  See, e.g., Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (noting that "[t]he familiar McDonnell Douglas framework governs Title VII . . . and Massachusetts General Laws, chapter 151B claims").

### B.      Plaintiff's Motion for Leave to File a Second Amended Complaint

Kane seeks to amend the operative complaint and points to Fed. R. Civ. P. 15(a) for support.  D. 34 at 3-4.  Rule 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, inter alia, undue or intended delay.'"  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a) and Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)).

Rule 15(a), however, does not apply here where a scheduling order was entered, D. 16, and the deadline for amended pleadings had passed.  "Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P.

---

[1] The Town argues that "[e]ven though the plaintiff here did not proceed under 42 U.S.C. § 1983, but proceeded under USERRA itself, qualified immunity or something like it should be considered."  D. 15 at 15.  This Court declines to entertain this argument because even in the § 1983 context, a municipality like the Town (the only defendant here) does not enjoy a qualified immunity defense.  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (noting that "[u]nlike public officials, a municipality does not have available a qualified immunity defense with respect to damages claims alleged to result from its own constitutional infractions").

16(b)."  <u>Steir</u>, 383 F.3d at 12.   "The scheduling order sets the deadlines for subsequent

proceedings in the litigation, including amending the pleadings."  <u>O'Connell v. Hyatt Hotels of</u>

<u>P.R.</u>, 357 F.3d 152, 154 (1st Cir. 2004).   A district court limits the period for amending the

pleadings "to assure that at some point both the parties and the pleadings will be fixed."  <u>Id.</u>

(citation and internal quotation marks omitted).   The heightened "good cause" standard is thus

meant to "preserve[] the integrity and effectiveness of Rule 16(b) scheduling orders."  <u>Id.</u> at 155;

<u>Cruz v. Bristol-Myers Squibb Co., PR</u>, 699 F.3d 563, 570 (1st Cir. 2012) (holding no abuse of

discretion in denying tardy motions to amend the complaint because "[a] scheduling order is not

a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without

peril") (citation omitted).

Unlike Rule 15(a)'s "freely given" standard, which focuses on the bad faith of the

moving party and the prejudice to the opposing party, "Rule 16(b)'s 'good cause' standard

emphasizes the diligence of the party seeking the amendment."  <u>O'Connell</u>, 357 F.3d at 155.

"Prejudice to the opposing party remains relevant but is not the dominant criterion."  <u>Id.</u>  But

"'[i]ndifference' by the moving party 'seal[s] off this avenue of relief' irrespective of prejudice

because such conduct is incompatible with the showing of diligence necessary to establish good

cause."  <u>Id.</u> (quoting <u>Rosario-Diaz v. Gonzalez</u>, 140 F.3d 312, 315 (1st Cir. 1998)).

Kane has not met the "good cause" standard.   First, Kane's motion is untimely:   Kane

filed his motion to amend on January 21, 2015, nearly one year after the Court issued its

scheduling order, D. 16, six months after the Court's amended pleadings deadline, <u>id.</u>, and a

month after the close of discovery.   D. 32; <u>see Berwind Prop. Grp. Inc. v. Envtl. Mgmt. Grp.</u>,

<u>Inc.</u>, 233 F.R.D. 62, 66 (D. Mass. 2005) (denying a motion to amend the complaint filed after the

close of discovery).   Second, and significantly, there is no prejudice to Kane because both parties

agreed at the hearing that Kane's proposed Second Amended Complaint simply adds more detailed factual allegations without changing the claims asserted.  To permit Kane to file a Second Amended Complaint would "effectively nullif[y] the purpose" of Rule 16(b).  O'Connell, 357 F.3d at 155 (internal quotation marks omitted).  Thus, the Court denies Kane's motion to amend.

### C.     Plaintiff's Motion for Partial Summary Judgment

Kane moves for partial summary judgment on three of the Town's affirmative defenses and on one of his claims.  D. 39.  The Court GRANTS IN PART and DENIES IN PART his motion.

#### 1.     The Town's Affirmative Defenses

Kane challenges three of the Town's affirmative defenses.  The first is a preemption defense.  D. 40 at 5.  The other two are exhaustion defenses.[2]  Id.  Kane argues that all three defenses fail as a matter of law.   Id. at 8-14.

USERRA provides that "[n]othing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter."   38 U.S.C. § 4302(a).  Kane argues that because of this language, USERRA does not preempt but expressly preserves his state law claims.

Some federal courts have interpreted § 4302(a) to mean that "Congress did not intend to replace any common law remedy that might also be available to plaintiff."   Hamovitz v. Santa

---

[2] Although Kane points to two defenses in the Town's answer as exhaustion defenses, the Court agrees with the Town that these two affirmative defenses are the "same."  D. 42 at 2.  As a result, the Court will analyze them together.

Barbara Applied Research, Inc., No. 07-cv-00454-TFM, 2010 WL 4117270, at *7 (W.D. Pa. Oct. 19, 2010) (quoting Slater v. Verizon Communications, Inc., No. 04-cv-00303-SM, 2005 WL 488676, at *4 (D.N.H. 2005)) (internal quotation mark omitted); see Reyes v. Goya of Puerto Rico, Inc., 632 F. Supp. 2d 142, 145 (D.P.R. 2009) (noting that "nothing in the statutory language suggests that state tort law causes of action are pre-empted by USERRA").  These courts believe that "the clear language of Section 4302(a) protects Plaintiff's right to seek additional relief under common law" because the "rights or benefits" in § 4302 refer not only to substantive employment rights and benefits, but also "the right to other causes of action."   Mills v. E. Gulf Coal Preparation Co., LLC, No. 08-cv-00260-ICB, 2010 WL 2509835, at *8 (S.D.W. Va. June 18, 2010); see Williams v. Sysco San Francisco, Inc., No. 10-cv-03760-MEJ, 2013 WL 1390695, at *4 (N.D. Cal. Apr. 4, 2013) (noting that "[b]y its plain terms, USERRA leaves open the potential for a plaintiff to assert state claims that provide greater rights or benefits than those set forth in USERRA" and "[b]y intentionally allowing a plaintiff to assert additional state claims, USERRA necessarily also leaves open the possibility of additional remedies or damages attendant to such claims, including punitive damages").

A few other courts suggest that similar state claims are not available because USERRA provides an adequate, even if incomplete, remedy.  See, e.g., McAlee v. Independence Blue Cross, 798 F. Supp. 2d 601, 607 (E.D. Pa. 2011) (holding that strict limitations on Pennsylvania's common law action for wrongful discharge in violation of public policy and the availability of relief under USERRA barred the plaintiff's wrongful discharge claim); Schmauch v. Honda of America Mfg., Inc., 311 F. Supp. 2d 631, 635 (S.D. Ohio 2003) (concluding "that the USERRA provides adequate remedies such that the public policies established by the USERRA are not jeopardized by denying [a plaintiff's] ability to pursue a tort action for a

17

violation of [Ohio] public policy"); Martin v. AutoZone, Inc., 411 F. Supp. 2d 872, 880 (S.D. Ohio 2005) (same) (citing Schmauch).  These cases deny plaintiffs from pursuing common law "public policy" claims because the state laws in question permit those claims only when no adequate statutory remedy exists.  See, e.g., McAlee, 798 F. Supp. 2d at 604 (noting that "the determinative issue at hand . . . [is] not . . . the preemptive intent of USERRA, but whether Pennsylvania common law precludes Plaintiff from bringing a public policy claim when USERRA offers its own remedy"); Schmauch, 311 F. Supp. 2d at 636 (noting that "neither party claims that the USERRA preempts the public policy tort claim" but "[r]ather, the point is that the USERRA provides its own adequate remedy, which forecloses the need for a separate public policy tort claim").

The Court, however, concludes that USERRA does not preempt Kane's state law claims. USERRA does not establish that Congress intended it to be a veteran's exclusive means to combat discrimination based on military status.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (noting that "'the purpose of Congress is the ultimate touchstone' in every pre-emption case") (quoting Cipollone v. Liggett Group, Inc., 505 U. S. 504, 516 (1992)).  Instead, § 4302(a) suggests that because USERRA recognizes that state governments may provide greater or additional rights or benefits to veterans, USERRA favors rather than restricts a plaintiff's ability to bring state law claims to redress any harm.  Accordingly, as a matter of law, the Town may not assert the defense that Kane's state law claims are preempted by USERRA.

With respect to the Town's exhaustion defenses, Kane argues that USERRA preempts any state law that prevents him from filing his federal claims.  Section 4302(b) of USERRA provides:  "[USERRA] supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in

any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."  38 U.S.C. § 4302(b).  Kane argues that this plain language trumps any state administrative prerequisite that might hinder his right to relief.  By contrast, the Town asserts that Kane was required to exhaust his administrative remedies and contest his missed promotions under Mass. G. L. c. 31, § 2 before the Massachusetts Civil Service Commission.  D. 37 at 13.  At the hearing, however, the Town's attorney appeared to concede that any exhaustion requirement applied only to Kane's state law claims.

Here, the Court is persuaded that as a matter of law, USERRA supersedes state laws that require a plaintiff to meet additional prerequisites before filing a federal USERRA claim.  In Carder v. Cont'l Airlines, Inc., No. 09-cv-03173, 2009 WL 4342477, at *6 (S.D. Tex. Nov. 30, 2009), aff'd, 636 F.3d 172 (5th Cir. 2011), airline pilots argued that Continental Airlines violated USERRA by failing to treat their military leave as service with the employer for the purposes of vesting and the accrual of pension benefits in an ERISA plan.  Continental argued that the USERRA claim should be dismissed because claimants seeking benefits from an ERISA plan are required to exhaust available administrative remedies under the plan.  The Carder court disagreed.  It declined to dismiss plaintiffs' claim because it held that the plain language of § 4302(b) did not permit either ERISA law or the ERISA plan itself to "establish[] administrative procedures that must be followed prior to exercising rights granted by USERRA."  Id. at *7; see Petty, 538 F.3d at 442 (holding that an employer's imposition of a return-to-work process, which required its veteran employees to complete new physical and psychological testing, was an impermissible "additional prerequisite" superseded by § 4302(b)).

19

Finally, the Town argues that Kane's failure to appeal within the civil service system precludes his state claims under Mass. Gen. L. c. 151B.  D. 42 at 3.  But Mass. Gen. L. c. 151B does not require Kane to do so.  The statute only requires that he file a timely complaint with the Massachusetts Commission Against Discrimination ("MCAD").  Mass. Gen. L. c. 151B, § 9; cf. Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 125 (2014) (noting that "nothing in the Wage Act excludes a housing authority employee from its protections or requires that such employee pursue relief from alleged wrongful conduct under the civil service system").  Civil service employees do not appear to need to exhaust their claim within the civil service system before they pursue their discrimination claims elsewhere.  See Salem v. Mass. Comm'n Against Discrimination, 404 Mass. 170, 172–174 (1989) (MCAD and Civil Service Commission concurrently resolved separate complaints filed by a plaintiff alleging that the Salem police department denied him an appointment due to his race).  Nevertheless, this Court declines to resolve whether the Town's exhaustion defenses fail as a matter of law against Kane's state law claims because the record on summary judgment is unclear and the parties disagree over the underlying facts.  The Town and Kane dispute not only whether Kane filed a timely complaint with the MCAD, but also whether Kane's administrative complaint adequately encompasses all of the Town's allegedly wrongful acts, particularly whether Kane knew or could have formed a reasonable belief that earlier violations were discriminatory.  D. 48 ¶ 186; D. 52 ¶ 186; D. 22 at 6-9; D. 26 at 5-6; D. 27.

Accordingly, this Court ALLOWS Kane's motion on the Town's preemption defense and ALLOWS Kane's motion on the Town's exhaustion defense as to Kane's federal USERRA claim.  The Court, however, DENIES Kane's motion on the Town's exhaustion defense as to Kane's state law claims and this defense shall remain.

2.      *Kane's USERRA Reemployment Claim under 38 U.S.C. §§ 4312-13*

Kane seeks summary judgment on his USERRA claim for reemployment under 38 U.S.C. §§ 4312-13.   Section 4312 provides veterans returning from military service the right to be rehired and the requirements that veterans must meet to enjoy that right.   To qualify for reemployment protection under § 4312, a plaintiff must show that "(1) his absence was due to military service, (2) he gave notice to his employer that he was leaving to serve in the military, (3) the cumulative period of military service with that employer did not exceed five years, (4) the employee was honorably discharged, and (5) the employee timely requested reinstatement." Rivera-Meléndez v. Pfizer Pharm., Inc., No. 10-cv-01012-MEL, 2011 WL 5025930, at *8 (D.P.R. Oct. 21, 2011).   Once a plaintiff qualifies for reemployment under § 4312, § 4313 "requires that the veteran be 'promptly reemployed' in that position." Petty, 538 F.3d at 440 (quoting 38 U.S.C. 4313(a)).

Both parties agree that Kane qualified for reemployment under § 4312.  D. 48 ¶ 116; D. 52 ¶ 116.   Kane argues that the Town violated USERRA because it imposed an additional condition on his reemployment:  a doctor's note before he could return to work.  D. 40 at 18. The Town, however, asserts that no delay occurred.  D. 42 at 5; D. 48 ¶ 140; D. 52 ¶ 140.  Kane was promptly reemployed; the Sandwich Police did not request a doctor's note to frustrate reemployment, but to assess what workplace accommodations Kane needed given that he was already on the job.  Def. SOF in Opp., D. 44 ¶¶ 1, 3-6, 8.

Kane also argues it is undisputed that the Town violated §§ 4312-13 because it failed to help him qualify for an employment position after he returned from Iraq with a service-related injury.  D. 17 at 17.   Under § 4313, an employer must make "reasonable efforts" to qualify a returning veteran to his reemployment position.  38 U.S.C. §§ 4313(a)(1)(B), (2)(B)(3)-(4).  The

Town, however, states that its employees at first were not aware that Kane required an accommodation and that the Town ultimately did accommodate his injury so he could work.  D. 44 ¶¶ 1-8.  Because the parties disagree as to the factual record as to what occurred when Kane was reemployed and this is a factual dispute that a jury will resolve, the Court DENIES Kane's request for partial summary judgment on his reemployment claim.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment, D. 36, DENIES Kane's motion for leave to amend his complaint, D. 33, and GRANTS IN PART AND DENIES IN PART Kane's motion for partial summary judgment, D. 39.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge